FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 10, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

EDDIE LOUIS SMITH, III,

        Plaintiff,

  v.

DONALD HOLBROOK, Superintendent, WSP, in his individual and official capacities; ALISA RIDENOUR, mailroom employee, WSP, in her individual and official capacities; SAMMI MUELKE, mailroom employee, WSP, in his individual and official capacities; ROY GONZALEZ, Headquarters Correctional Manager, DOC, in his individual and official capacities; GARY BOHON, Publication Review Committee Chairperson, DOC, in his individual and official capacities; NORM CALDWELL, Publication Review Committee member, DOC, in his individual and official capacities; LAURA SHERBO, Publication Review Committee member, DOC, in her individual and official capacities; ROBERT HERZOG, Assistant Secretary for Prisons, DOC, in his individual and official capacity;

NO: 4:18-CV-5108-RMP

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT ~ 1

| | |
|---|---|
| 1<br>2<br>3<br>4 | STEVEN SINCLAIR, Secretary, DOC, in his individual and official capacities; and JEFF PORTER, Sergeant, WSP, in his individual and official capacities,<br><br>                Defendants. |

BEFORE THE COURT is Defendants' Motion for Summary Judgment, ECF No. 57. The Court has reviewed the record, the relevant case law, and is fully informed.

## BACKGROUND

Eddie Louis Smith is an inmate at the Washington State Penitentiary. On January 20, 2018, one of Mr. Smith's family members sent him a book from Amazon.com entitled *The Willie Lynch Letter & The Making of a Slave*, in commemoration of Black History Month. ECF No. 59-2 at 17. Both parties refer to the book simply as "*The Making of a Slave*." The contents of *The Making of a Slave* are not in the record before the Court. However, the Court takes judicial notice of the book's language *sua sponte*, as the Court's analysis in this matter requires the Court to review the language of the book itself, rather than the parties' descriptions of the book's contents. *See* Fed. R. Evid. 201.[1] *The Making of a*

---

[1] The Court takes judicial notice of the book's language, which is not "subject to reasonable dispute" and "can be accurately and readily determined from [a source] whose accuracy cannot be reasonably questioned." *See* Fed. R. Evid. 201(b)(2).

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT ~ 2

*Slave* contains primary source material, including a letter by William Lynch and a manual for torturing African Americans in order to enslave them and to prevent slave uprisings. The book's contents, which are written in violent and graphic language and include descriptions of African Americans as sub-human, advocate control techniques for transforming African Americans into submissive slaves. *See* William Lynch, *The Willie Lynch Letter & The Making of a Slave* (Kashif Malik Hassan-El ed., Lushena Books 3d prtg. 2007).

The Department of Corrections refused to allow Mr. Smith to receive the book. Mr. Smith's first notice of rejection is dated February 6, 2018. ECF 1-1 at 4. The notice of rejection form states the title of the book, the location from which it was sent, and the reason for which it was withheld. *Id*. The notice also states that the book was reviewed and rejected statewide because it "advocates that a protected class or group of individuals is inferior and/or makes such a class/ group the object of ridicule and/or scorn, and may reasonably be thought to precipitate a violent confrontation between the recipient and a member(s) of the target group." *Id*. (citing DOC 450.100(III)).

Upon receiving notice that his book had been withheld by the prison, Mr. Smith sent a kite regarding the book. *See* ECF No. 59-2. After receiving the kite, prison official Alisa Ridenour gave Mr. Smith the correct form to appeal the rejection decision. ECF No. 59-2 at 2; *see also* ECF No. 59-2 at 16–17. On February 16, 2018, Ms. Ridenour forwarded Mr. Smith's appeal to headquarters

for review and processing.  ECF No. 59-2 at 2.  According to Ms. Ridenour, headquarters upheld the rejection of *The Making of a Slave*.  *Id*.  It is unclear whether Mr. Smith ever received notice of the final decision, upholding the rejection.  *See* ECF No. 1 at 12.  The evidence submitted by Mr. Smith, including prisoner kites and a formal grievance, indicates that by April 22, 2018, Mr. Smith still had not been notified of the status of his appeal.  *See e.g.*, ECF No. 59-2 at 8.

Mr. Smith has named Superintendent Donald Holbrook, in his individual and official capacity, in addition to a number of other individuals who he claims were involved in denying him access to *The Making of a Slave*.  Mr. Smith's complaint included a claim regarding the prison's handling of his grievance, which this Court previously dismissed with prejudice for failure to state a claim.  ECF No. 15 at 3–4.  Mr. Smith brings his remaining claims through 42 U.S.C. § 1983.  First, Mr. Smith alleges a Due Process claim against Defendants.  ECF No. 1 at 24.  Second, Mr. Smith raises an equal protection claim, stating that he was denied the book while other inmates were able to access the book at the facility library.  *Id*.  Third, Mr. Smith alleges a First Amendment claim against Defendants for restricting his access to published material.  Defendants have moved for summary judgment on all of Mr. Smith's claims.

## LEGAL STANDARD

A court may grant summary judgment where "there is no genuine dispute as to any material fact" of a party's prima facie case, and the moving party is entitled to

judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A genuine issue of material fact exists if sufficient evidence supports the claimed factual dispute, requiring "a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). A key purpose of summary judgment "is to isolate and dispose of factually unsupported claims." *Celotex*, 477 U.S. at 324.

The moving party bears the burden of showing the absence of a genuine issue of material fact, or in the alternative, the moving party may discharge this burden by showing that there is an absence of evidence to support the nonmoving party's prima facie case. *Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party to set forth specific facts showing a genuine issue for trial. *See id.* at 324. The nonmoving party "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 322 n.3 (internal quotations omitted). The Court will not infer evidence that does not exist in the record. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990). However, the Court will "view the evidence in the light most favorable" to the nonmoving party. *Newmaker v. City of Fortuna*, 842 F.3d 1108, 1111 (9th Cir. 2016). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## DISCUSSION

### A. Due Process Claim

#### 1. Two-Level Review

The decision to withhold prisoner mail "must be accompanied by minimum procedural safeguards." *Krug v. Lutz*, 329 F.3d 692, 697 (9th Cir. 2003). Minimal procedural safeguards include notice to the inmate that his incoming mail is being withheld and a "two-level" review. *Id*. at 697–98. Two-level review is "the right to appeal the decision to exclude incoming mail to a prison official other than the one who made the initial exclusion decision." *Id*. at 698 (citing *Procunier v. Martinez*, 416 U.S. 396, 417–18 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989)). To state a Fourteenth Amendment Due Process claim through Section 1983, the inmate must show that he was deprived of his property through "established state procedure, rather than [the] random and unauthorized action" of individual employees. *Sorrels v. McKee*, 290 F.3d 965, 972 (9th Cir. 2002). Similarly, when an inmate does not receive notice of the mailroom's decision to reject his incoming mail, the inmate must show that the "failure to provide notice was pursuant to prison policy" in order to prove a violation of his due process rights. *Sorrels*, 290 F.3d at 972. Proving negligence is insufficient. *Id*. at 972–73.

Here, Mr. Smith received notice that his book, *The Making of a Slave*, was withheld. Additionally, he was given an opportunity to appeal that decision.

While Mr. Smith may not have received notice of the final decision regarding his book, Mr. Smith has not provided evidence to prove that the lack of notice was caused by a prison policy. *See Sorrels*, 290 F.3d at 972–73. Because Mr. Smith was provided notice of the rejection and offered two-level review, he was afforded procedural due process as a matter of law.

### 2. Void-for-Vagueness

Mr. Smith also argues that the prison's policy, which prohibited him from receiving *The Making of a Slave*, is unconstitutionally vague. It is unclear whether the void-for-vagueness doctrine applies to prison policies. *See Castro v. Terhune*, 712 F.3d 1304, 1310 (9th Cir. 2013) (assuming that the void-for-vagueness doctrine applies to prison administrative regulations for purposes of analysis); *Bahrampour* v. *Lampert*, 356 F.3d 969, 975 (9th Cir. 2004) (using the *Turner* factors to decide a vagueness and overbreadth challenge regarding incoming prison mail, not the void-for-vagueness doctrine). As the Ninth Circuit previously has done, this Court will assume *arguendo* that the void-for-vagueness doctrine applies to prison administrative policies. *See Catro*, 712 F.3d at 1310.

The void-for-vagueness doctrine guarantees that people have "fair notice" of prohibited conduct. *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (2018); *see also Grayned v. City of Rockford*, 408 U.S. 104, 109–110 (1972). "A fundamental requirement of due process is that a statute must clearly delineate the conduct it proscribes." *Foti v. City of Menlo Park*, 146 F.3d 629, 638 (9th Cir. 1998)

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT ~ 7

(quoting *Kev, Inc. v. Kitsap Cty.*, 793 F.2d 1053, 1057 (9th Cir. 1986)).  Mr. Smith argues that the policy is vague for two reasons.  First, Mr. Smith claims that the regulation gives "any person working in the mailroom on any given day" the right to decide which books are prohibited, thereby inviting viewpoint discrimination.  ECF 79 at 14.  He also argues that "individuals purchasing books do not have adequate notice of the Department's rejected book list." *Id*. at 15.

First, the Court addresses Mr. Smith's assertion that "any person working in the mailroom on any given day" has the right to decide which books to reject.  While it is true that individuals working in the mailroom have some discretion to withhold incoming mail initially, that discretion is not unguided or unfettered.  DOC policy provides a list of reasons for which mailroom staff must withhold incoming mail.  *See* ECF No. 59-1 at 19–20.  The specific "rejection reason" that Mr. Smith challenges excludes any material that "[a]dvocates that a protected class or group of individuals is inferior and/or makes such class/ group the object of ridicule and/or scorn, and may reasonably be thought to precipitate a violent confrontation between the recipient and a member(s) of the targeted group."  ECF No. 59-1 at 20.  The guideline is tailored to prevent discriminatory materials that may reasonably be thought to incite violence in the prison population, and the Court does not find that the language of the policy is unconstitutionally vague.

Moreover, Mr. Smith's book, *The Making of a Slave*, had been banned statewide before his family sent it to him in 2018.  Mr. Smith's book was on the

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT ~ 8

DOC shared publication database as a statewide rejected book. *See* ECF No. 59 at 4 (*The Making of a Slave* was listed as a rejected publication on October 24, 2016.); *see also* ECF No. 59 at 3 (providing link to DOC web page instructing the public on how to send publications to prisoners and providing publication rejection list). When a mailroom employee withholds a publication, an established Publication Review Committee reviews the decision, including the rejection notice and scanned pages of the rejected material.[2] ECF No. 59 at 2; *see also* ECF No. 59-2 at 3 (explaining how to appeal decision to withhold mail). The committee uses the standards laid out in DOC Policy 450.100, and other relevant policies when applicable, to determine whether a rejection decision should be upheld. ECF No. 59 at 2. Prison mailrooms have a shared publication database, which informs all mailrooms about which publications are under review. *Id*. at 3. Once the committee reaches a decision regarding a particular publication, the decision is binding on all mailroom employees. *Id*. "Mailroom staff do not have the

---

[2] It is not entirely clear if the prisoner must appeal the withholding of an incoming publication to trigger review by the Publication Review Committee. The rejection form provided to inmates, noting which publications have been withheld, states that an appeal is not necessary for withheld publications. ECF No. 59-2 at 3 ("An appeal request is not needed for rejected publications or outgoing mail/eMessages, which are automatically reviewed by the Superintendent/ designee or Publication Review Committee."). However, the DOC has a form specifically designed to allow inmates to appeal mailroom rejections of publications. ECF No. 59-2 at 17 (Publication Rejection Appeal). Regardless, in this instance, Mr. Smith did lodge a formal appeal.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT ~ 9

discretion to allow a publication on the rejected publications database to enter the prison facility." *Id*. Therefore, contrary to Mr. Smith's assertions, once a book is on the list, the policy does not allow for discretionary or discriminatory enforcement.

Mr. Smith also argues that the policy is vague because it does not provide adequate notice of prohibited publications to non-prisoners. However, the DOC publishes its list of prohibited books. ECF No. 59 at 3. Therefore, non-prisoners have access to the DOC list of prohibited books. For the foregoing reasons, even if the void-for-vagueness doctrine applies to prison policies, Defendants' policy is not unconstitutionally vague. Because the challenged DOC policy is not unconstitutionally vague, provided Mr. Smith with two-level review and notice of the book's rejection, and provided Mr. Smith's family with prior notice that *The Making of a Slave* was prohibited material, Mr. Smith's due process claim fails. Therefore, Mr. Smith's Section 1983 claim, premised on the Due Process Clause, fails as a matter of law.[3]

/ / /

---

[3] In his complaint, Mr. Smith also sought relief for various prison officials' failure to adequately respond to his kites and grievances. ECF No. 1 at 24. However, this Court dismissed that claim with prejudice in a prior Order because the failure of prison officials to respond to or process a particular grievance does not violate the Constitution. ECF No. 15 at 3 (citing *Ramirez v. Galaza*, 334 F.3d 860 (9th Cir. 2003) and *Mann v. Adams*, 855F.2d 639, 640 (9th Cir. 1988)).

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT ~ 10

## B. Equal Protection Claim

The Equal Protection Clause of the Fourteenth Amendment "requires the State to treat all similarly situated people equally." *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008). To succeed on an equal protection claim, the plaintiff must plead and prove that the defendant "acted in a discriminatory manner and that the discrimination was intentional." *Federal Deposit Ins. Corp. v. Henderson*, 940 F.2d 465, 471 (9th Cir. 1991). In order to survive a motion for summary judgment, the plaintiff must "produce evidence sufficient to establish a genuine issue of fact as to the defendant's motives." *Id*. Mr. Smith has alleged that *The Making of a Slave* was banned solely because it appeals to "a particular ethnic or racial group." ECF No. 1 at 24. However, he has not provided evidence of discriminatory intent. Mr. Smith cannot rest on his allegations alone at the summary judgment phase. *Celotex*, 477 U.S. at 322 n.3 (internal quotations omitted). Moreover, while Mr. Smith states that he is interested in the material due to his ethnic background, he has not made any clear allegations or provided any evidence regarding his own race. Mr. Smith's Section 1983 claim, premised on a violation of the Equal Protection Clause, must be dismissed with prejudice due to lack of evidence supporting disparate treatment or discriminatory intent.

## C. First Amendment Claim

While inmates have First Amendment rights, those rights are "limited by the fact of incarceration, and may be curtailed in order to achieve legitimate

correctional goals or to maintain prison security." *McElyea v. Babbit*, 833 F.2d 196, 197 (9th Cir. 1987). To decide if a particular restriction on incoming inmate mail is consistent with the First Amendment, district courts apply the *Turner* analysis. *Bahrampour*, 356 F.3d at 975. The *Turner* analysis requires the Court to consider four factors: (1) whether the regulations are "content-neutral and rationally connected to a legitimate penological interest"; (2) whether there are alternative means available for the inmate to exercise the right; (3) the potential burden or other effects on guards, other inmates, and prison resources if the court finds that the right must be protected; and (4) the existence of potential, alternative solutions that would protect the inmate's constitutional rights. *Id*. at 975–976.

Regarding the first factor, regulations are considered "content-neutral" if they target the effects that certain types of material may have "rather than simply prohibiting broad selections of innocuous material." *See id*. at 976. "In the prison context, regulations that apply to specific types of content due to specific inherent risks or harms are considered to be content neutral." *Id*. (citing *Thornburgh v. Abbott*, 490 U.S. 401, 415–16 (1989)). Additionally, rejecting material that is reasonably thought to encourage violence promotes a valid penological interest. *See McCabe v. Arave*, 827 F.2d 634, 638 (9th Cir. 1987) (suggesting that literature that advocates violence as a means of achieving racial purity may be prohibited in the prison setting) (citing *Murphy v. Missouri Dep't of Corrections*, 814 F.2d 1252, 1257 (8th Cir. 1987) (prisons may prohibit materials that are racially inflammatory

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT ~ 12

in such a way that they may cause violence)); *see also Aikens v. Jenkins*, 534 F.2d 751, 756–57 (7th Cir. 1976) ("Material that may reasonably be thought to encourage violence may be prohibited by a narrowly drawn regulation."). However, prisons may not prohibit racist material solely on the basis that it is racist. *McCabe*, 827 F.2d at 638.

Pursuant to the first *Turner* factor, the Court must consider whether the regulation is content-neutral and rationally related to a legitimate penological interest. Mr. Smith was denied his book because it violated DOC Policy 450.100, which forbids materials that "advocate[] that a protected class or group of individuals is inferior and/or makes such class/group the object of ridicule and/or scorn, and may reasonably be thought to precipitate a violent confrontation between the recipient and a member(s) of the targeted group." Defendants assert that *The Making of a Slave* falls into this category because it promotes beating and killing African Americans, members of a protected class. *See* ECF No. 59 at 4. Additionally, the book uses offensive stereotypes and language to describe African American people. *Id*. Israel Gonzalez, Correctional Manager at Department Headquarters in Tumwater, states that this type of material causes "serious security and safety concerns." *Id*. The contested regulation is content neutral in the prison setting, as it focuses on the effect that the prohibited material may have. Specifically, the regulation only prohibits material that "may reasonably be thought to precipitate" violent interactions. Preventing violence is a valid penological

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT ~ 13

interest because of the importance of protecting the safety of those incarcerated. Therefore, the policy is rationally related to a valid penological interest.

Second, the Court must consider whether Mr. Smith is able to exercise his First Amendment right in alternative ways. Mr. Smith has failed to argue that he is unable to learn about his heritage from other sources, like textbooks. *See* ECF No. 57 at 9. "Nowhere does Smith claim that he does not have access to similar types of historical information through the prison library or through other publication materials which do not expressly advocate violence or mistreatment against African Americans." *Id*. Third, the Court addresses the potential effects of allowing Mr. Smith to receive *The Making of a Slave* on prison guards, other inmates, and prison resources. The introduction of a book that advocates violence and enslavement based on race causes safety concerns, thereby putting other inmates and guards at risk, and potentially placing a strain on the prison's resources. Fourth, the Court asks whether there is a potential alternative solution to protect Mr. Smith's First Amendment rights and preserve prison security. Neither Mr. Smith nor Defendants have suggested an alternative solution, and the Court is unaware of a solution that would allow Mr. Smith to keep his book without raising safety concerns. After an analysis of the *Turner* factors, the Court finds that Defendants have not violated Mr. Smith's First Amendment rights as a matter of law. Therefore, Mr. Smith's Section 1983 claim, premised on a violation of his First Amendment rights, is dismissed with prejudice.

Accordingly, it is **HEREBY ORDERED**:

1. Defendants' Motion for Summary Judgment, **ECF No. 57**, is **GRANTED**.

2. Judgment shall be entered for Defendants against Plaintiff.

3. Any remaining, pending motions in this matter are **DENIED AS MOOT**, and any hearing dates are hereby **STRICKEN**.

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order, enter Judgment, provide copies to Plaintiff and to counsel, and **close this case**.

**DATED** December 10, 2019.

*s/ Rosanna Malouf Peterson*
ROSANNA MALOUF PETERSON
United States District Judge
